# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LYNETTE COOPER,** | * | |
| *Plaintiff,* | * | |
| v. | * | 1:19-cv-03141-DLB |
| **BOZZUTO & ASSOCIATES, INC., et al.,** | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, <u>MOTION FOR SUMMARY JUDGMENT</u>

Defendants ("Bozzuto") Defendants Bozzuto & Associates, Inc., Thomas Bozzuto, Toby Bozzuto, Richard L. Mostyn, Angela Brunner, and "Jack Bzzula," by and through their attorneys, respectfully submit this memorandum in support of their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

**Plaintiff's Allegations**

Plaintiff's Complaint describes that she applied for an apartment and submitted to a background check completed at Anthem House, a property managed by Bozzuto Management Company,[1] on June 27, 2019. *See* ECF No. 1. Plaintiff alleges that on July 1, 2019, a Bozzuto employee Angela Brunner notified Plaintiff that she passed the criminal background check, but failed the credit screening. *Id.* According to Plaintiff, Ms. Brunner stated that "Bozzuto Corp. would feel more comfortable" if she applied with a co-signer. *Id.*

---

[1] Bozzuto & Associates, Inc. is neither the manager nor the owner of Anthem House. The proper party would instead be Bozzuto Management Company, a separate legal entity.

On July 3, 2019, Ms. Cooper returned to Anthem House so that her mother, Mary Hart, could complete a co-signer application. Complaint, ECF No. 1. Ms. Cooper alleges that she and Ms. Hart met with a property employee named "Jack Bzzula"[2] and he was "pacing." *Id.* Ms. Cooper alleges that Mr. Bzzula shared with them that he was attending a "Trump Rally." *Id.* She alleges that Mr. Bzzula informed them that a background check would occur. *Id.* She claims that, in a subsequent conversation, Mr. Bzzula stated that he "personally looked into [her] background, . . . profiled [her] . . ." and "found somethings [sic]." Ms. Cooper claims her second application was denied after this interaction. *Id.*

Ms. Cooper filed the Complaint in this case on November 4, 2019. She has also filed related complaints against Bozzuto with the Maryland Commission on Civil Rights and the Baltimore City Office of Civil Rights, both of which are still pending. Finally, in a related case, Ms. Cooper has sued an investigator from the Maryland Commission on Civil Rights, alleging the investigator acted improperly in processing her complaint against Bozzuto. *See Cooper v. Waters*, Case No. 1:19-cv-03243-GLR.

### Facts regarding Ms. Cooper's Credit Screening

Ms. Cooper's application was processed pursuant to Bozzuto's uniform credit and criminal screening procedures. Bozzuto requires that all leaseholders be credit qualified through the third-party screening company, and uses CoreLogic, RPS ("CoreLogic"). *See* Affidavit of Liesa Wilburn, attached as **Exhibit 1**. CoreLogic performs credit screening and considers both the applicant's credit history and a public record data check on landlord/tenant matters. *Id.* at ¶ 3. CoreLogic uses a proprietary formula to calculate a screening score for each applicant. *Id.* at ¶ 3.

---

[2] There was no employee by this name employed at Anthem House. It appears Ms. Cooper has misspelled the name of an intern that worked for Bozzuto Management Company at Anthem House. *See* Brunner Aff., Ex. 2.

If the applicant's score is not above or within the qualifying credit range for the property, then CoreLogic informs the property that the resident has not passed the credit screening. *Id.* at ¶ 5. CoreLogic's credit screening is performed without any reference to the applicant's demographic information, including race. *Id.* at ¶ 5. If an applicant is denied due to the credit screening, the applicant may reapply with a co-signer, who must be approved in an independent credit screening by CoreLogic. *Id.* at ¶ 6.

On June 27, 2019, Ms. Cooper applied to Anthem House and submitted to the standard applicant background check conducted by CoreLogic. *See* Affidavit of Angela Brunner attached hereto as **Exhibit 2**. Ms. Cooper's application was denied because she failed to pass the credit screening. *See* Wilburn Aff., Ex. 1. According to a report provided by CoreLogic, a copy of which is attached as **Exhibit 3**, Ms. Cooper had multiple items in her credit history that affected the credit screening analysis. Specifically, Ms. Cooper's credit history contained collection matters, a charge-off, and a landlord tenant filing. *See* CoreLogic Background Check for L. Cooper, Ex. 3**.**

In accordance with the property's application policy, Ms. Cooper was invited to reapply with an independently qualifying co-signer. *See* Brunner Aff., Ex. 2, at ¶ 6. Ms. Cooper reapplied with her mother, Mary Hart, but Ms. Hart also failed to pass the credit screening. *See* CoreLogic Screening Report for Mary Hart, attached as **Exhibit 4**. The CoreLogic report recommended "denial" based on a poor credit history, which included two previous collection matters. Wilburn Aff., Ex. 1, at ¶ 10. Bozzuto again denied Ms. Cooper's application based on Ms. Hart's failure to pass the uniform credit-screening process.

## Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006) (internal quotation marks omitted). *See also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) ("Nor must we accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

Summary judgment is appropriate when the Court, determines "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996). When a party submits sufficient evidence to support summary judgment, the burden shifts to the non-moving party to show there are genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). A party opposing summary judgment "may not rest upon the mere allegations or denials of its pleadings but must instead, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial." *United States ex rel. Chasney & Co. v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 831 (D. Md. 2016). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

**Argument**

I.   **Plaintiff has named numerous defendants not involved in her allegations, and these defendants must be dismissed.**

Defendants Thomas Bozzuto, Toby Bozzuto, and Richard L. Mostyn are named in Plaintiff's Complaint as parties. Her factual allegations, however, make no mention of Thomas Bozzuto, Toby Bozzuto, and Richard L. Mostyn. For these reasons, as a preliminary matter, the Court should dismiss these individuals as defendants.

II.  **Plaintiff has not alleged a plausible case of housing discrimination.**

Plaintiff's Complaint should be dismissed because it does not contain the necessary elements of a claim for racial discrimination in housing.

Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.,* makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

As described below, Plaintiff has failed to state a claim under the FHA for two reasons: (a) she does not allege evidence of racial discrimination, and (b) she does not allege that she was qualified to rent or purchase the subject housing, and thus cannot satisfy her initial burden under the *McDonnell Douglas* test.

    A.   **Plaintiff does not allege facts demonstrating that the application denial was motivated by racial animus.**

Plaintiff must allege, as part of her claim, that the application denial was motivated by racial animus. *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 631 (D. Md. 2019). One way for Plaintiff to satisfy this burden is for Plaintiff to allege direct racial discrimination.

Alternatively, Plaintiff may allege indirect or circumstantial evidence of discrimination. The burden-shifting method known as the *McDonnell Douglas* test is instructive, although Plaintiff is not required to plead a *prima facie* case under that framework. *See Corey v. Sec'y, U.S. Dep't of Hous. & Urban Dev. ex rel. Walker*, 719 F.3d 322, 325 (4th Cir. 2013); *Martin v. Brondum*, 535 F. App'x 242, 244 (4th Cir. 2013); *Pinchback v. Armistead Homes Corp.,* 907 F.2d 1447, 1452 (4th Cir. 1990) (applying the *McDonnell Douglas* burden-shifting framework to housing discrimination cases).

In this case, Ms. Cooper does not allege direct or indirect evidence of racial animus. Besides captioning the Complaint as one for racial discrimination, her complaint itself does not mention race in any way. She fails to allege that the denial was motivated by racial animus, and this failure is fatal to her claim.

Even reviewing her Complaint in a light favorable to her, there are only a few factual allegations that could be interpreted as describing wrongful conduct by Bozzuto. Specifically, Ms. Cooper alleges that Defendant Bzzula (1) stated in conversation that he was attending a Trump rally, and (2) stated that he had "personally looked into [her] background, where he profiled her and that he found somethings [sic] . . . ." Based on these factual allegations, Ms. Cooper baldly alleges that Mr. Bzzula acted inappropriately.

These allegations are not sufficient to plausibly demonstrate racial animus. Courts have held that facially race-neutral statements, without more, will not demonstrate racial animus on the part of the speaker. For example, in *Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 577 (4th Cir. 2017), a loan applicant claimed his loan was denied for racially discriminatory reasons, and alleged that one of the lender's employees "reacted negatively upon hearing that Plaintiff

[was] African-American."[3] The Court affirmed the dismissal of the plaintiff's claims, holding that "[w]ithout more, [plaintiff]'s allegation that one Wells Fargo employee reacted negatively upon learning his race [was] insufficient to constitute direct evidence of discrimination." *See also Martin v. Brondum*, 535 F. App'x 242, 245 (4th Cir. 2013) (holding that alleged racially-neutral statements by defendants that plaintiffs were not sufficient to establish racial animus).

      **B.**      **Plaintiff fails to satisfy her burden under the *McDonnell Douglas* test as she does not allege that she was qualified to rent an apartment at Anthem House.**

In the absence of direct evidence of discriminatory motive, in order to state a claim of housing discrimination, plaintiff must allege facts sufficient under the *McDonnell Douglas* test to give rise to a plausible inference of racial discrimination. *Sullivan v. Hernandez*, 215 F. Supp. 2d 635, 638 (D. Md. 2002). For a discrimination claim based on the denial of a housing application, the plaintiff must specifically allege in her complaint that "she was qualified to rent or purchase certain property or housing." *Id.* This allegation is necessary to establish that the denial could have been improper, as opposed to a proper denial based on the lack of qualification.

This requirement to establish that the applicant was qualified for the transaction was enforced in *Mobley v. Rossell*, 297 F. Supp. 2d 835, 840 (D. Md. 2003), which involved a discrimination claim by the potential purchaser of property. The *Mobley* Court granted a motion for summary judgment in favor of the landlord, holding that the applicant's allegations did not plausibly demonstrate that she was actually able to purchase the property at issue.

---

[3]    The appellate opinion does not describe the statement, but it was described with more detail in the District Court's unpublished opinion. *See Glenn v. Wells Fargo Bank, N.A.*, No. CV PX 15-3058, 2017 WL 371956, at *3 (D. Md. Jan. 26, 2017).

In this case, Plaintiff has failed to allege that she was a qualified applicant; i.e. that she had sufficient creditworthiness to pass the uniform screening process. If anything, her allegations are consistent with the fact that her application was denied due to items in her credit history. The allegation that she was qualified is necessary to establish a plausible argument, under the *McDonnell Douglas* test, that the denial was improper. Her failure to allege this necessary elements requires dismissal of her claim.

### III. Plaintiff's application was denied for a legitimate, non-discriminatory reason: She failed a credit screening.

Even if the Court determines that Plaintiff alleged enough facts to establish a plausible claim for racial discrimination in violation of the FHA, Defendants are entitled to summary judgment because the denial of Plaintiff's application was legitimate and non-discriminatory.

At the summary judgment stage in a discrimination case, courts frequently invoke the *McDonnell Douglas* framework to test out the sufficiency of the evidence. A housing defendant can rebut sufficient allegations of a discrimination claim with evidence of a legitimate, non-discriminatory reason for the housing decision. *See Martin*, 535 F. App'x at 245. This is the second step of the *McDonnell Douglas* test, which allows defendants in the employment and housing discrimination context an opportunity to rebut alleged indirect evidence of racial discrimination. *Id.* If Defendants come forward with a nondiscriminatory reason, Plaintiff must demonstrate that the proffered reason was pretextual and Defendant acted with an underlying discriminatory motive. *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 631, n.8. (granting judgment for defendants because plaintiff failed to refute defendant's rationale for its refusal to sell the townhome to plaintiff).

A housing applicant's failure to pass a credit screening is a legitimate, non-discriminatory reason to deny an application for housing. *See Schanz v. The Village Apartments*, 998 F. Supp.

784, 789 (E.D. Mich. 1998) (dismissing plaintiff's claim because plaintiff failed to demonstrate he qualified under the landlord's income and credit requirements, which the court deemed a "justifiable business reason[]" for denial); *Daniels v. Brooklyn Estates & Properties Realty*, 413 F. App'x 399, 401 (2d. Cir. 2011) (holding that applicant's failure to meet the required income and credit levels was a legitimate, non-discriminatory reasons for denying a housing application). *Cf. Sullivan v. Hernandez*, 215 F. Supp. 2d 635, 638 (D. Md. 2002) (recognizing denial based on credit history was "reasonable and non-discriminatory," while holding that evidence existed to suggest that the explanation was pretextual).

Here, Bozzuto's denial of Ms. Cooper's application was based on the poor credit history revealed by her credit screening. *See* Wilburn Aff., Ex. 1. CoreLogic's review of Ms. Cooper's credit history and public information returned evidence of collection matters, a charge-off; and a landlord tenant filing. *See* CoreLogic Report, Ex. 3.

Plaintiff has not alleged any facts to suggest that she was improperly screened, or to support that the credit denial was pretextual or racially-motivated.[4] She has not even alleged that she disputes the accuracy of information contained in her credit. Instead, Plaintiff has set forth conclusory allegations that are insufficient to sustain her claims and thus should be dismissed. Importantly, because Plaintiff alleges no facts that would call into question the legitimacy of CoreLogic's methodology, there would be no basis for Plaintiff to now demand discovery. This

---

[4] Plaintiff appears to misunderstand what CoreLogic's background check considered as part of its credit screening. She alleges that she did an internet search to determine what "cause[d] my denial of housing." She searched her own name and clicked on a link for a website called "Pacemonitor," which apparently referenced her involvement in a plaintiff's lawsuit against Baltimore Housing. However, her claim against Baltimore Housing was not one of the items considered by CoreLogic. *See* Exhibits 1, 3.

case is ripe for immediate resolution, and the Court should enter judgment in Defendants' favor as a matter of law.

## Conclusion

The Court should grant Defendants' motion to dismiss and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

/s/  Sarah M. Nyren
James D. Bragdon, Fed. Bar No. 27924
jbragdon@gejlaw.com
Sarah M. Nyren, Fed. Bar No. 20432
snyren@gejlaw.com
GALLAGHER, EVELIUS & JONES LLP
218 North Charles Street, Suite 400
Baltimore MD  21201
(410) 727-7702
*Attorneys for Defendants*